## CHAUNCEY L. HULBURT *et al. vs.* ABNER MERRIAM *et al.*

The Statute of Limitations adopted by the Governor and Judges, May 15, 1820, continued in force as adopted until repealed in 1838; and its provisions run against the claims of persons who were, at the time the cause of action accrued, out of this State, but not without the United States, and who have not, from the time of the accruing of said cause of action, come within the State.

Where there is a discrepancy between an original law on file, and the printed copies thereof, the original must prevail.

The term "persons beyond seas," according to its legal interpretation, recognized as including persons out of the State, as well as those out of the United States.

Case reserved from the Wayne Circuit.

The 10th section of the limitation law of the Territory of Michigan, adopted May 15th, 1820, as printed, reads as follows: "This act shall not extend to bar any infant, *feme covert*, person imprisoned, or beyond seas, or without the United States," &c. But the original act on file in the Secretary's office, with the *original* signatures of the Governor and Judges, reads thus: "Sec. 10. This act shall not extend to bar any infant, *feme covert*, person imprisoned, or· (*beyond seas*) without the United States, &c., with the words "beyond seas" erased by having a pen drawn through them. This act, in five days after its passage, was deposited in the Secretary's office, received, and endorsed for record. It was recorded, but how long after filing, does not appear, and the record and marginal notes thereto are as follows:

(3)eras ed in the o- riginal. "That this act shall not extend to bar any infant, *feme covert*, persons imprisoned, or (beyond seas 3,) without the United States," &c.

This was an action commenced by declaration, in Feb., 1833, upon a judgment rendered in the Supreme Court of Judicature of the State of New York, at the October term, 1834. Defendants plead the general issue, and gave notice that they would give in evidence in bar, &c.; that the judgment declared on was not rendered within eight years next preceding the commencement of this suit.

Plaintiffs replied that they (the plaintiffs) at the time of the accruing of the said cause of action, set forth in the declaration, and thence, hitherto and at all times, until within eight years previous to the commencement of this suit, were beyond seas, to wit: in the State of New York.

To which pleading the defendants demurred, assigning as reasons—

19

1. That the plaintiffs being in the State of New York at all times, &c., and until within eight years previous to the commencement of the suit, did not and does not take the cause of action out of the operation of the Statute of Limitations.

2. That the replication is insufficient in law, in that it does not allege that the plaintiffs, from the time the cause of action accrued and until within eight years prior to the commencement of the suit, were without the United States, or any other fact or facts which would bring the case within any exception to the Statute of Limitations, or that in law constitutes a good and sufficient answer to the defence set up by the defendants.

Upon these pleadings the following questions arose, and were reserved by the Circuit Judge for the opinion of this Court, viz :

1. Does the Statute of Limitations in force in 1834 run against the claims of persons who were, at the time the cause of action accrued, out of this State, but not without the United States, and who have not, from the time of the accruing of such action, come within this State?

2. Do persons out of this State, but not without the United States, come within the provision of Section Ten of said Statute of Limitations?

*Wilcox & Gray,* for plaintiffs.

1. The cause of action is to be governed and determined by the statute of limitations in force prior to the Revised Statutes of 1838. (*Rev. Stat. of* 1838, *p.* 580, *and Laws of* 1843, *p.* 43.)

2. The plaintiffs are not barred by the law of 1820. The law of 1820 is found in the compilation of 1833, page 569, *et seq.* On page 572, sec. 10 enacts, that "any person imprisoned or beyond seas, or without the United States," may bring

their actions within the times limited, " calculating from the time such impediment shall be removed."

The above portion of section 10 includes three distinct classes, of whom "*persons beyond seas*" are one.

That " beyond seas" must be construed " without the limits of the State," is well settled.   (3 *Wheat.* 541; *U. S. Cond.* 320.)

3. It is claimed, that in the original law on file in the Secretary's Office, the words " beyond seas" are stricken out; but there is and can be no evidence, showing when this erasure was made.   The records in the office of the Secretary are open to all, and any person interested and so disposed, might readily run a pen through the words at any time, subsequent to the passage of the law.   The question is not, how does the original now read ? but, how did it read when it passed ?   The erasure now appearing, is evidence on one side; but on the other, there is the stronger evidence that the law was twice printed *by authority*, to wit: in the compilation of 1827 and that of 1833, and each time as first above cited, " or beyond seas or without the United States."

It is very easy to conceive how an interested party might make the erasure, but it is almost impossible to conceive how words not in the act at the time, should be printed, or how an error should continue so long in print, in general use throughout the State.   We submit that the Court can come to no other conclusion, than that the erasure was made *since* the act was first printed.

In the case of Peck *vs.* Pease, heard at the Circuit Court of the United States at its last term, this identical question was presented and passed upon.   The pleadings were the same as in this case, and the Court held :   That from the Statute having been printed and re-printed with the words in, and from the length of time the printed copies had been in use, they could not presume otherwise than that the statute was passed as printed, and that persons out of the State, were within the exceptions in sec. 10.

*McReynolds & Emmons*, for defendants.

1. The Court will not *presume* the erasure a fraud; before so holding, it will require proof of some sort.

The Court, before deciding that the original act contained the erased words, must presume that they were not only fraudulently erased from the original, but that the record thereof was also fraudulent.

2. The erasure makes no difference whatever in the act. Whether the erased words are there or not, the construction of the act must still be the same.   Allowing the erased words to stand, the act reads, "persons imprisoned or beyond seas, without the United States." The erased words "beyond seas" are surperfluous, and do not in any way change or affect the legal construction to be given to the statute. ( *Whitney* vs. *Goddard*, 20 *Pick.* 304.)

3. The history of all legislation in new States forbids the probability of the act being passed as printed.   The spirit of legislation in this and all other new States, has been to protect its citizens from stale demands, and it is unreasonable to suppose it would enact a law so unreasonably liberal to non-residents, who under it might hold back until the evidence was lost, which could defeat unjust claims.

In the case of Peck *vs.* Pease, the U. S. Circuit Court overruled a demurrer similar to the one in this case.   But, although entitled to great respect, the decisions of that Court upon local laws, are not precedents to this Court.   That Court cannot be presumed equally competent to construe our local laws, and never does so, save doubtingly and reluctantly, unless with a local decision to guide.

As to this point, see also, Jackson *vs.* Chew, 6 U. S. Cond. 496, 497; Hurde *vs.* Vathir, 5 Pet., 401; 5 U. S. Cond. 515; 2 Pet. 85.

It is well settled, that the Courts will correct the printed laws by the original or a certified copy.   (*Rex* vs. *Jeffries*, 1

*Strange*, 446 ; *De Bow* vs. *People*, 1 *Denio*, 9 ; *Beecher* vs. *James*, 2 *Scam.* 462.)

By the Court, WHIPPLE, J.

The Revision of 1838 provides that when a cause of action shall have accrued " before the 31st day of August, 1838, it shall not be affected by this chapter ; but all such causes of action shall be determined agreeably to the law under which the right of action accrued."

This provision received from this Court an interpretation in the case of Cramer *vs.* Lastley, 2 Doug. 307; and the view taken by us in that case, was confirmed by an act of the Legislature, in 1843.   Under these acts and the construction given to them by this Court, the questions submitted for our advice are answered, when we determined· what law in relation to the limitation of  actions was in force in 1834, when the cause of action accrued to the plaintiffs.

· The 10th section of the " act for the limitation of suits," &c., adopted May 15, 1820, as printed, provides that " this act shall not extend to bar any infant, *feme covert*, persons imprisoned, or *beyond seas*, or without the United States, or *non compos mentis*, from bringing either of the actions before   mentioned,   within   the    term   before   set   and limited for bringing such actions, calculating from the time such impediment shall be removed."

This section of the act of 1820, is found in the Revisions of 1827 and 1833.

By  section  two  of  the  schedule  to  the  Constitution  of 1835, it is provided that " all laws now in force in the Territory of Michigan, which are not repugnant to this Constitution, shall remain in force until they expire by their own limitations, or be altered or repealed by the Legislature." The laws of the *Territory*, by this provision, became the laws of the *State*, when the Constitution took effect. ·

Under this provision of the Constitution, and the laws

above referred to, the solution of the questions propounded to us by the Circuit Court would not be difficult. But it is said that some of the exceptions to be found in the 10th section of the act of 1820, as printed, never had the force of law; and in support of this view we have been referred to a certified copy of the original act, and of a record of the same, now deposited in the office of the Secretary of State. By the act, to which the signatures, respectively, of the Governor and Judges by whom it was adopted, are affixed, it appears that the exceptions specified in the original draft of section 10, were as follows: "*And be it further enacted,* that this act shall not extend to bar any infant, *feme covert,* persons imprisoned, or beyond seas, without the United States, or *non compos mentis,*" &c. The words "beyond seas" are erased in the act now on file, so that the difference between the act as it now appears in the archives of the State Department, and the act as printed in 1820, consists in this—that in the latter the words "*beyond seas,*" erased in the original act, are found in the printed code; and the word *or,* where it occurs in immediate connection with the words "without the United States," in the act as printed, was never inserted in the original.

The ordinance of 1787 made it the duty of the Governor and Judges to report to Congress the laws by them adopted. This law of 1820 was so reported, and from an examination of a certified copy procured from the State Department at Washington, it appears that as reported to Congress, the exceptions in section 10 are—"persons imprisoned or without the United States," &c. No doubt, then, can exist, but that as originally adopted, section 10 contained no exceptions in favor of persons beyond seas, but not without the United States. The interpolation of the word "or," it is very clear, creates the material discrepancy between the original and printed act; for, reading the 10th section, with the word *or* stricken out, the fourth exception would include

persons " beyond seas, without the United States." It is. conceded that the term "persons beyond seas," according to its legal interpretation, includes persons out of the State, as well as those out of the United States.

If the printed act, as it is found in the Revisions of 1820, 1827, and 1833, is to prevail, the plaintiffs have brought themselves within one of the exceptions specified in section 10, and would be entitled to judgment on the demurrer: if on the contrary, the original act deposited in the State Department is to govern, then it is equally manifest that the defendants have spread upon the record a perfect defence.

The act of the 15th of May, 1820, took effect under the first grade of the Territorial government.    The Governor and Judges were, by the ordinance of 1787, invested with the authority to *adopt* laws of the original States, but were not clothed with legislative powers.

The act of 1820 appears on its face to have been borrowed from Vermont, and it has been said that the exceptions contained in the Vermont law, differ from those embraced in section 10 of the act of 1820.  If this be true, then the act of the Governor and Judges, in this respect, was unauthorized and invalid.   It is believed, however, that the erasure of the words, "beyond seas" in the Vermont law would not affect its legal interpretation.   The words of that law are, " or beyond seas, without the United States."   It is too clear for argument that the words " beyond seas" are superfluous, and the Governor and Judges, while they were restricted as to the source from which to adopt laws, were not only at liberty to reject superfluous words, but to make such changes in the language as their taste might suggest.   The authority to adopt a *law*, does not necessarily imply that the precise words of that law are to be adopted.   As this authority to adopt laws was vested in the highest executive and judicial functionaries of the territory, who were doubtless familiar with the import of technical terms, it is not unlikely that the words " beyond

seas" were intentionally erased, as they were manifestly superfluous. That this view may very well have been taken, I refer to the case of Whitney *et al. vs.* Goddard, admr., 20 Pick. 304. The exceptions to section 4 of the Massachusetts statute, is expressed in these words: "This act shall not be understood to bar any infant, *feme covert*, persons imprisoned, or beyond sea, without any of the United States," &c. It will be perceived that the saving provision in the statute is identical with that of the Vermont statute. Chief Justice Shaw in delivering the opinion of the Court says: "But in our statute, the words "beyond sea" do not stand alone; they are immediately followed by the words "without any of the United States." We are of the opinion, that in the use of these words the Legislature did not intend to point out two distinct disabilities, that of being beyond sea as one, and that of being without any of the United States as another; using the former in a technical sense, as equivalent to "out of the Commonwealth," because it would render the words "without the United States," not only superfluous but repugnant." The learned Judge then proceeds to show why the words "beyond sea," were used in the Massachusetts statute, although wholly superflous, and concludes his reasoning, on this point, with the remark that "the latter words ('without any of the United States') are put by the way of explanation and qualification of the preceding; equivalent to saying, that by these words, "beyond sea," we mean without the United States." If this be a sound exposition of the Massachusetts statute, it will be admitted that the erasure of the words "beyond sea," in the act of 1820, in no respect altered the Vermont law, but simply expunged superfluous words, rendering the law unambiguous, and thus fitting it for practical application. The erasure, then, of these words, furnishes no ground for the belief that the alteration of the original act was fraudulent, and their introduction into the Revision of 1820, was, therefore, unauthorized. It was the act of the printer, and not of the

Governor and Judges. It is unnecessary to dwell upon the other discrepancy between the original and printed act. There is no pretence that the word " or" immediately before the words "without the United States," was in the Vermont law, or in the law adopted by the Governor and Judges. This also was the act of the printer of the laws. It requires no ingenuity to account for this interpolation. It was supposed that the act pointed out two distinct disabilities, and that the insertion of the word *or*, would more clearly express that object. The Governor and Judges used the words " beyond sea" in a technical sense, as equivalent to " without the United States." The printer of the laws seems to have considered that the words " beyond sea," expressed something different from the words " without the United States," and to render the distinction more clear, interposed the word *or*, thus erecting a disability not contemplated by the law-making power. It is well settled by the practice of our Courts, that where a discrepancy exists between an original law and the printed copy, the former must govern; and hence, unless the law of 1820 was amended or repealed by competent authority prior to 1834, the defence relied on is perfect. But it is said that the limitation law of 1820 was republished by authority, in the revisions of 1827 and 1833, and having been thus recognized by legislative enactment, and never questioned by our Courts; that it is not to be disturbed, or its validity questioned at this late day. These revisions do embody the act as it is found in the printed code of 1820, and if it can be reasonably inferred that either of the revisions of 1827 or 1833 contain a re-enactment of the printed statute of 1820, all difficulty will be removed. But if it shall appear that the limitation act as published in these revisions, was merely a reprint of the law as erroneously published in the revision of 1820, it is then equally clear that no argument can be derived from the perpetuation of the error. It continues to be, what it was when first published, the error of the printer, and not

the authoritative and binding act of the legislative authority. The authority of the Governor and Judges to adopt laws, was succeeded by that of a Legislative Council, who were authorized to originate, and with the approval of the Governor, to pass laws. What, then, does the volume published in 1827 purport to embody? The title page indicates that it contains—

1. Acts revised by the Commissioners, and passed by the Second Council.

2. The Acts and Resolutions of the First and Second Councils.

3. *The Acts now in force, adopted by the Governor and Judges* of the Territory.

4. The Acts of Congress, &c.

In this volume (p. 253) we find a re-print of the limitation act of 1820. It does not appear to have been revised by the Commissioners, but was published as an act then in force, adopted by the Governor and Judges. The formula " *Be it enacted by the Governor and Judges,*" &c., is preserved, and the words " *Adopted May* 15, 1820," clearly indicate that it was a mere re-publication of one of the acts then in force. Had this law been re-enacted, the formula prescribed by the Council—" Be it enacted by the Legislative Council," &c., would have been followed; and in lieu of the word "adopted," the word " approved" would have been substituted. If the statute in question derived its authority from the Legislative Council of 1827, it is not likely that upon its face, it would appear to have been " *adopted*" by the Governor and Judges in 1820. But the question is conclusively settled by a resolution of the Council, passed on the day of its adjournment, and an act passed the day next preceding the adjournment. The resolution is in these words: " Resolved, That the President superintend the arrangement and printing of the acts and resolves passed during the session of this Council, *and the other acts author-*

*ized by law to be printed,*" &c. The act referred to contains
this provision: " All acts in force on the first day of Novem-
ber last are hereby repealed, except private acts, &c., and
excepting all such acts as have been preserved and retained
by the first and second sessions of the Second Council, which
acts are hereafter recited by their titles, to wit:

" An Act to organize the Militia, approved April 2, 1825..

" *An Act for the limitation of writs on penal statutes,
criminal prosecutions, and actions at law, adopted May* 15,.
1820." Here there is an act expressly excepted from the
operation of the general repealing clause, and with other acts
" preserved and retained." Of the laws contained in. the
volume published in 1827, about forty are published as hav-
ing been " adopted" at various periods prior to the organiza-
tion of the Legislative Council, and having the formula—
" Be it enacted by the Governor and Judges," &c. Of these
forty laws, no mention is made in the Journal of the Coun-
cil. The Commission to revise the laws in the volume of
1827, was authorized by an act approved April 12, 1825.
The duty of the Commissioners was prescribed with clear-
ness and precision; they were " to examine all the public
acts of the Territory now in force, and to revise, consolidate,.
and digest the same, upon the following principles:

1. All the acts upon the same subject, shall be digested
into one act.

2. The principles of the existing laws may be preserved,.
or such alterations or additions may be made as the said
Commission may deem expedient.

3. Acts not considered necessary by the Commission
may be omitted, and deficiencies may be supplied by new
acts.

4. The formula " Be it enacted by the Legislative Council
of the Territory of Michigan," shall be used in the first sec-
tion only of each act."

And it was further resolved, " That the said Commission

shall report the several acts by them revised and prepared, to the Legislative Council, at their next session, for their consideration." These provisions show the object for which the Commission was created, and define the manner in which the trust confided to them was to be executed. No legislative authority was or could have been delegated to that body. Their report was to be made to the Council for *consideration*. Their final report was made on the 27th Dec., 1826, and on the 29th Dec. the Commissioners were discharged, and their report "accepted." This *acceptance* of the report had the effect, simply, of bringing it before the Legislature for consideration. The Journal of the Council, however, shows that the Commissioner reported bills for the action of the Council from time to time. These bills were referred to appropriate committees, and being reported back, passed through the ordinary forms of legislation, and were either passed or rejected by the Council; and if passed, were presented to, and bear evidence of having received the approval of the Governor. Of the laws of 1827, seventy-five are published as having been "approved April 12, 1827," and about twenty as "approved April 13, 1827," and the journals show the action of the Council upon each of these acts.

The Journal further shows that the Commissioners did report for the consideration of the Council, a bill entitled "a bill for the limitation of actions," and that on the same day it was referred to the judiciary committee. It does not appear that it was ever reported back by the committee, or that it received further action by the Council. Page 28 of the Journal of the Council shows that a petition was presented to that body, praying that the statute of limitations, adopted by the Governor and Judges, May 15th, 1820, be repealed. This petition was also referred to the judiciary committee, who made a report *adverse* to the prayer of the petitioners, and on the last day of the session, leave was given to withdraw the petition, and at the same time the act was approved

retaining and preserving, in express terms, the limitation act of 1820. The Journal shows also that for several weeks after the acceptance of the *final* report of the Commissioner, the Council was diligently employed in considering the bills reported to them. But it is useless to prosecute our inquiries any farther on this subject. The public records exhibit conclusive evidence that the limitation act of 1820 was "retained and preserved" by the Council, and not re-enacted. A critical examination of the code of 1833, shows beyond controversy, that the limitation act on page 569 is also a re-print of the law adopted May 15, 1820. This last code contains, as its title imports: 1, Laws in force condensed by the Council; 2, Laws in force in the desired order of publication; 3, Original laws passed by the Council. Without following the action of the Council in relation to the code of 1833, I simply refer to the Journal, page 200, by which it appears that a resolution was adopted authorizing the President to appoint a committee to " condense and collect" the laws, and " report to the next Council, with a view of facilitating the publication thereof in a *new edition*. The committee contemplated by this resolution was appointed, and this concludes the action of the first session of the fifth Council. At the second session of the fifth Council, the committee " to collect and arrange " the laws, reported bills from time to time, which were referred to appropriate committees, and were either rejected or passed with the approval of the Governor. No mention is anywhere made in the Journal of this session of the law in question, which proves very conclusively that no modification of the act then in force was made. At a late day a resolution was adopted " that all public acts, and no other, shall be printed and included in the volume of laws; it shall be the duty of the Secretary of the Council to direct *the order in which said laws shall be printed in the volume:* And further, it shall be the duty of the Secretary of the Territory to furnish the printer with copies of *all laws*

*now in force.*" Such is a condensed history of the legislation
in respect to the code of 1833, and by referring to page 569,
it will appear that the statute of limitations of May 15, 1820,
adopted by the Governor and Judges, was preserved with
the errors that crept into the revisions of 1820 and 1827.
The code of 1833 also contains a list of the acts repealed, or
for which condensed acts were substituted by the Council,
from which it may be inferred that the original act remained
unchanged, inasmuch as it is not contained in this list. No
further legislation on this subject was had until the revision,
by the State Legislature of 1838, when the act "adopted
May 15, 1820," was expressly repealed. It is not presumed
that the Legislature would repeal an act not in force, nor be
guilty of the folly of repealing an act *adopted* by the Gov-
ernor and Judges in 1820, if that act had not have been con-
sidered in force at the date of the repealing act. The Legis-
lature considered the act of 1820, adopted by the Governor
and Judges, as in full force, and this understanding by the
Legislature was in entire harmony with the opinion enter-
tained by the Bench and the Bar. I never before heard it
suggested that the limitation act of 1820 underwent a revi-
sion, or was ever re-enacted by the Legislative Council.

In the discussions in our Courts, it was always referred to
as an act adopted by the Governor and Judges in 1820, and
remaining in full force and vigor until its repeal in 1838. It
is quite true, that the act as printed in the codes of 1820, 1827,
and 1833, was referred to indifferently, and the law was ad-
ministered as it is there found. No suspicion was entertained
that errors so serious had crept into the printed act, until a
comparatively recent period. No sanction is given, then,
from the circumstance, that the laws were printed and dis-
tributed by authority. The various resolutions on this sub-
ject refer to " *laws to be printed*," and can give no force or
validity to the act, as it is re-printed in 1827 and 1833. To
give to these republications the authority and binding force

of laws, it must appear that they were prescribed by the legislative power of the Territory.   It is unnecessary, in respect to the revision of 1827, to resort to the doctrine of presumption.

We have shown what laws that volume contains, and by what authority they were enacted.   Their validity has never been drawn in question; the volume embodies laws regularly acted upon and passed by the Legislative Council, upon the report of the Commissioners, and laws adopted by the Governor and Judges, and in force at the time the revision was made.   In regard to the former class, or the laws passed by the Council, they did not derive their efficacy from the acceptance of the report of the Commissioners, but from the joint action of the legislative and executive departments of the Territory.   That action was regular, and in accordance with those rules by which legislative bodies are usually governed.

We regret that there should be a conflict of opinion between this Court and the Circuit Court of the United States for this district, in respect to the questions submitted for our opinion by the Circuit Court of Wayne County.   These questions have been considered with great care, and we entertain no doubt as to the correctness of the opinions we have expressed. Administering, as we are, a State law, we must necessarily be controlled by the views we have formed, however much we may desire to conform to the opinion of the learned Judge who pronounced the judgment in the Circuit Court of the United States, in the case of Peck, survivor &c., *vs.* Pease. We have had occasion to say, what is now re-affirmed, that the decisions of the Supreme Court of the United States, upon all questions arising under the Constitution and laws of the United States, will be regarded as authoritative.   The rule established by the Federal and State Courts in this respect, applies a remedy to the mischiefs that would grow out of a conflict of views between those tribunals.

Let it be certified to the said Circuit Court for the County of Wayne, as the opinion of this Court:

1. That the statute of limitations adopted by the Governor and Judges, May 15, 1820, continued in force as adopted until repealed in 1838, and that its provisions do run against the claims of persons who were, at the time the cause of action accrued, out of this State but not without the United States, and who have not, from the time of the accruing of said cause of action, come within this State.

2. That the original law on file must govern in preference to the printed copies thereof, and that persons out of this State, but not without the United States, do *not* come within the provisions of section 10 of said act, as adopted and in force in the year 1834.

3. That upon the pleadings reported to this Court, the demurrer of defendants to the replication of the plaintiffs, should be sustained.