Crew, C. J.
The indictment in this case against the defendant David Groves was found and presented under favor of Section 6835, Revised Statutes, as amended April 9, 1908, which amended statute as passed by the general assembly, approved by the governor and filed in the office of the secretary of state reads as follows: “Whoever in the night season maliciously and forcibly breaks and enters any inhabited dwelling house with intent to commit a felony, or with intent to steal property of any value, shall be imprisoned in the penitentiary during life; but upon recommendation of mercy by the jury shall be imprisoned not more than thirty years nor less than five years; and whoever in the night season maliciously and forcibly breaks and enters, or attempts to break and enter, any uninhabited dwelling house, or any kitchen, smokehouse, shop, office, storehouse, warehouse, malthouse, still-house, mill, pottery, factory, water craft, schoolhouse, church, or meeting house, barn or stable, railroad car, car factory, station house, hall or any other building, or attempts to break and enter any inhabited dwelling house with intent to steal property of any value, or with intent to commit a felony, shall be imprisoned in the ■ penitentiary not more than fifteen years, nor less than one year; and if any person shall have, or keep in his possession any tools, implements,, or any other things used by *357 burglars, for housebreaking, forcing doors, windows, locks or buildings, or other places where goods, wares, merchandise, or money is kept with the intention of using such tools or implements burglariously, shall be imprisoned in the penitentiary not more than five years nor less than one year.” As officially published in volume 99 Ohio Laws, pages 98 and 99, said statute is made to read as follows: “Whoever in the night season maliciously and forcibly breaks and enters any inhabited dwelling house with intent to commit a felony, or with intent to steal property of any value, shall be imprisoned in the penitentiary during life; but upon recommendation of mercy by the jury shall be imprisoned not inore than thirty years nor less than five years; and whoever in the night season maliciously and forcibly breaks and enters, or attempts to break and enter, any uninhabited dwelling house, or any kitchen, smokehouse, shop, office, storehouse, warehouse, malthouse, stillhouse, mill, pottery, factory, water craft, schoolhouse, church, or meeting house, barn or stable, railroad car, car factory, station house, hall or any other building, or attempts to break and enter an uninhabitated dwelling house with intent to steal property of any value, or with intent to commit a felony, shall be imprisoned in the penitentiary not more than fifteen years, nor less than one year; and if any person shall have, or keep in his possession any tools, implements, or any other things used by burglars for housebreaking, forcing doors, windows, locks, or buildings, or other places where goods, wares, merchandise, or money is kept with the intention of using such tools or implements burglariously, shall be imprisoned in the penitentiary not more than five years nor less than one *358 year.” It will be observed upon comparison of the sections above quoted that there is a substantial difference and disagreement in terms, between the statute actually enacted by the legislature, and the statute as printed and published in said volume 99 of Ohio Laws. In the statute as published, through inadvertence and by manifest mistake, the word “uninhabited,” or as it is therein printed “uninhabitated,” was erroneously substituted for the word “inhabited,” the latter being the word employed and used in the statute as it was passed and became a law. Thus it results that while by the provisions of amended Section 6835, as in form and language enacted by the legislature April 9, 1908, it is made an offense, to attempt, in the night season, to break and enter an inhabited dwelling house with intent to commit a felony, — which is the particular offense alleged and charged in' the indictment in this case, —yet, exactly the opposite of this is true under the provisions of said section as printed and published, for within the provisions of the statute as printed it is no offense to attempt to so break and enter an inhabited dwelling house, but is an offense to thus attempt to break and enter an uninhabited dwelling house. Upon this state of fact the question here presented is, must the court, in determining what the law is, be governed by the statute as printed or by the enrolled statute. It is the contention and claim of counsel for the defendant, that inasmuch as Section 128, Revised Statutes, makes the secretary of- state the lawful custodian of all laws passed by the state legislature, and Section 129, Revised Statutes, requires of him that he, “make accurate copies of all laws and resolutions of the general assembly, and deliver the same to the supervisor of *359 public printing; and he shall cause to be printed at the end of each volume of the laws his certificate that the laws and resolutions as printed therein are truly copied from the original roll in his office,” that therefore such certificate when so made and appended is, by force of Section 5245, Revised Statutes, final and conclusive, and cannot be contradicted or impeached by production of the original statute, as enrolled and deposited in the office of the secretary of state. To this claim of counsel we are unable to yield our assent. While true that the certificate of the secretary of state printed at the end of each volume of the laws, makes the contents of such volume competent and prima facie evidence of the correctness and authenticity of the laws as therein printed, it is not conclusive of that fact, and where the verity of a statute officially published is challenged or attacked, on' the ground that the same is incorrectly printed, and was not enacted by the legislature in the language and form in which it appears in the printed volume; the best and most conclusive evidence of what the legislature did enact, is the original enrolled statute signed by the presiding officers of both branches of the general assembly, approved by the governor and deposited in the office of the secretary of state. Upon such an inquiry, in the absence of the enrolled statute, the statute as printed will be taken and considered as presumptively correct, but when the original enrolled statute is itself before the court it is conclusive, and must be given controlling effect in the determination of what the law is. To hold the rule otherwise, or as it is claimed by counsel for defendant, would require that effect be given to the printed statute, because officially published, al *360 though such statute was never in fact enacted and passed by the legislature. Such rule, opposed as it is to both reason and authority, should not receive judicial sanction. Upon the proposition, that where a discrepancy exists between the printed official statute,, and the enrolled statute, that the former must give way to and be controlled by the latter, all the authorities are, we believe, in harmony and agreement, and we cite only the following. Lewis’ Sutherland Statutory Construction, volume 1, section 74; Bruce v. State of Nebraska, 48 Neb., 570; Wilson v. Duncan, 114 Ala., 659; Greer v. State, 54 Miss., 378; 26 Am. & Eng. Ency. of Law, (2 ed.), page 555; Simpson v. Union Stock Yards Co., 110 Fed. Rep., 799; Weaver v. Davidson County, 104 Tenn., 315; Hulburt v. Merriam, 3 Mich., 144; McLaughlin v. Menotti, 105 Cal., 572; Purdy v. The People, 4 Hill, 384. If we are right then in our conclusion, that where there is a variance or disagreement between the statute as printed and the enrolled statute the latter controls, it follows, that the indictment in the present case charges an offense that is within the provisions of amended Section 6835, Revised Statutes, as enacted and passed by the general assembly April 9, 1908,-and therefore the first and fourth grounds of defendant’s motion to quash were not well taken and should have been overruled.
It is further objected by counsel for defendant that the indictment in this case is defective and insufficient, in the respect that it does not definitely state what- particular felony the accused, at the time of the attempted breaking and entering, intended to commit. While it is a rule of criminal pleading, grounded upon sound • principles, that the offense *361 alleged to have been committed must be -described with such precision and certainty as to advise the accused of the nature and character of the crime or offense charged against him, yet, as said by this court in Stoughton and Hudson v. State, 2 Ohio St., 563: “Unreasonable strictness ought not to be required; and where an indictment clearly charges a crime, and fairly advises the defendant what act of his is the subject of complaint, the principal object of pleading is attained. The highest degree of certainty is not required; certainty to a common intent is sufficient, and no rule ought to prevail, which would only serve to shield the guilty, instead of protecting the innocent.” The statute under which the indictment in the present case was found and presented provides as follows: “Whoever in the night season maliciously and forcibly * * * attempts to break and enter any inhabited dwelling house with intent to steal property of any value, or with intent to commit felony, shall be imprisoned in, the penitentiary not more than fifteen years, nor less than one year.” In charging the latter offense, as thus described and defined, the prosecuting attorney in framing the indictment herein, employs and follows the language of the statute. While in some cases, and in charging certain offenses, this perhaps would not be enough, in the present case, by way of charging this offense, it is, we think, all that is required. Under this statute, a general intent either to steal property of some value, or to commit a felony, the other constituent elements of the offense being present, completes the offense, and it is wholly immaterial what particular property the accused intended to steal, or what particular felony he had in mind to commit. Hence, an *362 averment;in the language of the statute, that the accused attempted to break and enter with intent to commit a felony, is sufficiently definite, and from the very nature of things, in many instances, such intent could not be more particularly or certainly stated. An acquittal of the defendant on such an indictment, would be a complete protection and bar to another prosecution for the same “attempt” though laid with intent to commit a particular felony. In Spencer v. State, 13 Ohio, 401, the first paragraph of the syllabus is as follows: “In an indictment for burglary with intent to steal goods and chattels, it is not necessary to aver what specific goods were intended to be stolen.” Wood, J., in the opinion in that case, says: “If it be necessary to specify, with certainty, the particular goods and chattels which the burglar designs to steal, when the felonious breaking and entry is made with such guilty intention, but he is arrested in his progress before a larceny is actually committed, it appears to us the main object of this statute would be, in a great measure, defeated. Every material averment in an indictment must be proved. The law would not presume an intention to select one article in preference to another. The lone thief, who enters the well filled storehouse, or jeweler’s shop, can not, reasonably, be supposed to enter with the design to abstract the whole that either contains. It would be beyond the ordinary power of man to consummate, or his skill to conceal; and it would be only in case of voluntary confession, in which the thief should announce the chattels he intended to take, that a conviction could be had, if larceny was not consummated, when the statute makes the breaking and entering, with the intention, the *363 crime. Upon what principle would it be presumed, if goods and chattels were specified, that they were the ones intended to be taken, in preference to others? And, how could this material fact, thus averred be proved? . Very few, it is perfectly clear, would be the cases in which it could be done, though the general intent to steal might be perfectly manifest, from the time, manner, and other surrounding circumstances of the entry. We are, therefore, of opinion, it is not necessary to the sufficiency of an indictment, under this statute, that it should de-, scribe any specific goods and chattels intended to be stolen.” So in the case at bar,' to hold this indictment fatally defective for want of an averment as to the particular felony the defendant had in mind to commit, at the time when he attempted to break and enter said dwelling house, would be to set up and require an impracticable standard of certainty and particularity whereby the prosecution, in almost every instance, would be entrapped into making allegations which, on the trial, it would be impossible to prove or establish. Numerous authorities are cited by counsel for defendant, as sustaining their claim in this behalf, all of which we have carefully examined and considered. Some of these authorities we do not regard as in conflict with the views we have herein expressed, when considered' with reference to, and in connection with, the facts, or particular statute, upon which they are based. Others, we think, are opposed to the view- herein taken, but these are in conflict with the weight of modern authority, and not in harmony with the former decisions of this court. We are of opinion that the indictment in the present case is sufficient,
*364 both in form and allegation, and that the motion to quash should therefore have been overruled.

Exceptions sustained.

Summers, Spear, Davis, Shauck and Price, JJ., concur.