WEAVER *v.* DAVIDSON COUNTY.

(*Nashville.* March 17, 1900.)

1. CHANCERY COURT. *Jurisdiction.*

Chancery Court has jurisdiction of a suit brought by a Clerk and Master against a county to recover back the fees and emoluments of his office. paid, under protest, into the county treasury, by direction of the unconstitutional statute known as the "Estes fee bill," so far as the amount so paid exceeds the allowances for salaries and expenses paid by the county under said statute, for the benefit of his office. (*Post, pp. 319, 320.*)

Cases cited: Cocke *v.* Porter, 2 Hum., 15; Polk *v.* Lynn, 8 Lea, 326; Dodd *v.* Benthall, 4 Heis., 608.

2. CHANCERY PLEADING AND PRACTICE. *Certainty in averments of bill.*

A bill brought by a Clerk and Master to recover fees and emoluments paid into a county treasury under protest, pursuant to the direction of an unconstitutional statute, is sufficient, though it does not contain a specific prayer for a money decree, where it sets forth all the facts and circumstances by apt averments, showing the payment of money to the county from time to time under protest. (*Post, pp. 320, 321.*)

Cases cited: O'Connor *v.* Knoxville Hotel Co., 93 Tenn., 708; Dodd *v.* Benthall, 4 Heis., 608.

3. STATUTES. *Conflict between printed Act and enrolled and manuscript Act.*

In case of conflict of the printed Act with the enrolled Act corresponding with the original manuscript Act, the enrolled Act is presumed to be the correct one. (*Post, pp. 321–323.*)

4. SAME. *Conflict between words and figures.*

Where a statute undertakes to express a number in both words and figures, and the two conflict, the expression in words prevails, especially where the expression in figures is inclosed in brackets, and may be rejected without producing incomplete-

ness of sense or sentence, and, if adopted, would destroy the statute. (*Post, pp. 323–326.*)

Act construed: Acts 1897, Ch. 124.

Cases cited: Warder *v.* Millard, 8 Lea, 581; Brewer *v.* Mayor, 86 Tenn., 732.

5. COURT OF CHANCERY APPEALS. *Finding of fact.*

A finding of the Court of Chancery Appeals, based wholly upon an examination of the legislative journals, that a statute should not have contained a certain parenthetical clause that produced a conflict in its terms, is characterized as a finding of fact that is conclusive upon this Court, but the Court, nevertheless, took the precaution to examine the journals for itself before concurring in the finding. (*Post, pp. 325, 326.*)

6. ESTES FEE BILL. *Vicious class legislation.*

The statute known as the "Estes Fee Bill," which puts certain county officials upon salaries to be paid out of the county treasury, giving them deputies, to be paid likewise out of the county treasury, whose number and amount of their salaries are to be fixed, under certain restrictions, by the County Courts, and which requires such officials to pay all fees and emoluments of their respective offices into the county treasury as indemnity for the salaries so paid, is unconstitutional and void, as vicious class legislation, by reason of the omission, in the provisions of its eighth section, to place any restriction upon the discretion of the County Court in fixing the number of deputies allowable to the respective county officers, and the amounts of their salaries, in that class of counties, embracing only Knox and Hamilton, having a population of not less than 50,000 nor more than 90,000, while material restrictions are placed upon the discretion of the County Courts in this regard, with respect to the classes of counties having above 90,000 and below 50,000 population. (*Post, pp. 328–334.*)

Constitution construed: Art. XI., Sec. 8.

Act construed: Acts 1897, Ch. 124.

Case cited: Sutton *v.* State, 96 Tenn., 708.

7. SAME. *Same.*

Although the objectionable feature of the "Estes Fee Bill" is confined to its eighth section, the other provisions of the Act are so intimately interwoven with and dependent upon that section, and the whole scheme and operation of the Act so vi-

Weaver *v.* Davidson County.

tally affected and disturbed by the elimination of that section, that it cannot be presumed that the Legislature would have passed the Act without that section, and therefore the entire Act falls with that section. (*Post, p. 334.*)

Act construed: Acts 1897, Ch. 124.

Cases cited: Dawson *v.* Reelfoot Lake District, 97 Tenn., 151; Tillman *v.* Cocke, 9 Bax., 429; Jones *v.* Memphis, 101 Tenn., 188.

8. CONSTITUTIONAL LAW.   *Class legislation affecting counties.*

Class legislation that is vicious cannot be justified or sustained in behalf of counties any more than in behalf of individuals. (*Post, p. 328.*)

Cases cited and approved: Sutton *v.* State, 96 Tenn., 696; Burkholtz *v.* State, 16 Lea, 71; Woodard *v.* Bryan, 14 Lea, 520.

---

FROM   DAVIDSON.

---

Appeal from Chancery Court of Davidson County. H. H. COOK, Ch.

CARROLL & McKELLAR, J. S. PILCHER, and J. E. POPE for Weaver.

J. A. CARTWRIGHT and P. M. ESTES for Davidson County.

W. W. McDOWELL, Sp. J.   Thomas J. Weaver, the Clerk and Master of the Chancery Court of Davidson County, Tennessee, on November 18, 1899, brought this suit in equity in that Court against the said county, in which he set forth a substantial cause of action and claim in equity, not-

withstanding there appears on the statutes of the State Chapter 124 of the Acts, generally known as the Estes Fee Bill.

The county of Davidson duly appeared by a written motion to dismiss the bill of complaint—first, because the bill did not make such a case as gives the Court jurisdiction to hear and determine the matters; and, second, for want of equity on the face of the bill.

The Chancellor was of opinion that both contentions of the defendant were well founded, and thereupon dismissed the bill, and the complainant prayed and perfected an · appeal to this Court.

The case thereupon was heard on the transcript of the record by the Court of Chancery Appeals, and the Court, after full consideration of the several assignments of error, was of opinion that all of them were bad except three, viz. :

1. That the cause of action set forth in the complaint was substantial and cognizable in equity.

2. That the Act, as appeared in the printed copy of the Acts, was the one which was passed by both houses of the General Assembly of the State of Tennessee, and duly approved by the Governor.

3. That the Act was in conflict with Section 8, Article 11, of the Constitution of Tennessee, which ordains that "the Legislature shall have no power to suspend any general law for the . benefit of any particular individual, nor to pass any law

for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunities, or exemptions other than such as may be, by the same law, extended to any member of the community who may be able to bring himself within the provisions of such law."

From the decree entered, recommending a reversal of the decree of the Court below, the county of Davidson perfected an appeal to this Court, and the cause was heard upon the assignments of error of the said county, which presented for this Court's consideration the three questions decided by the said Court of Chancery Appeals against it.

In the order in which those questions arise, we proceed to their consideration. The first inquiry is: Is the case one of which the Court below had jurisdiction upon the averments of the bill?

It is first argued that the bill does not seek a recovery of the moneys paid by the complainant to the county of Davidson from time to time under protest, nor an account of such moneys, but merely asks that the Act be declared unconstitutional. It would serve no useful purpose to quote the allegations of the bill of complaint. They have been carefully examined, and we con-

cur with the Court of Chancery Appeals in its
view of the question.

It is a fundamental rule of equity that where-
ever a legal or equitable right exists, whether
arising from contract, from legal or equitable own-
ership of property, or otherwise, the violation of
that right will be enjoined on proper application
to the Chancery Court, unless the legal remedy
is full, adequate, and complete. 3 Pomeroy's Eq.
Jur., Sec. 1369; Gibson's Suits in Chy., Secs.
46, 786.

The complainant has a property right in all
the fees, commissions, perquisites, and emoluments
received by him or any of his deputies by vir-
tue of his office, no matter whether the said
sums arise from fees, commissions, perquisites,
emoluments, or order or direction of Court, or
pay for services as special commissioner, trustee,
or otherwise, and when he pays the same to the
county of Davidson under protest, he has the un-
doubted right to propound his suit therefor against
the county of Davidson, in order that he may
recover the same and administer his office under
the requirements of the laws of Tennessee, just
as though the said Chapter 124 was not of the
statutes of the State, if that Act is void. *Cocke
v. Porter's Executors,* 2 Hum., 15; *Polk* v. *Lynn,*
8 Lea, 326; *National Bank* v. *Chattanooga,* 8
Heis., 814.

It is true that the bill does not specifically

pray for a money decree against the county of Davidson, but it sets forth all the facts and circumstances by apt averments, showing the payments of moneys from time to time to the said county under protest, and this, in our opinion, if the Act is unconstitutional, entitles the complainant to equitable relief. *O'Connor* v. *Knoxville Hotel Co.*, 9 Pickle, 908; *Dodd* v. *Bunthall*, 4 Heis., 608.

The result is that the decree of the Chancellor upon this point is erroneous, and the ruling of the Court of Chancery Appeals is correct.

After the finding of the Court of Chancery Appeals that Section 8 of Chapter 124 of the Acts of 1897 was in conflict with Section 8 of Article 11 of our State Constitution, and made the Act invalid, the defendant county discovered that the second proviso of Section 8 of the printed Act was different from that in the manuscript bill—which is the enrolled bill—signed by the two Speakers and the Governor. Its counsel, being of the opinion that this was a fundamental error which had moved the Court of Chancery Appeals to declare the Act unconstitutional, filed a petition for a rehearing in that Court. This petition was very fully considered by that Court, when it determined that Section 8 of the enrolled Act was also obnoxious to said constitutional provision, and dismissed the petition for rehearing.

20 p—21

The defendant insists that the Court erred in each of these rulings, and sets up its contention by an assignment of errors.

That part of Section 8 of the printed Act which the Court of Chancery Appeals held to be in conflict with our State Constitution is as follows:

"SEC. 8. *Be it further enacted,* That whenever, in the opinion of the County Trustee, Register of Deeds, Sheriff, Clerk and Master of the Chancery Court, Clerks of the various Circuit, County, Special, and Criminal Courts, the duties devolving upon their office are more than they can perform by devoting their entire time and attention thereto, they may appoint one or more deputies or assistants as the exigencies of the case may require; *Provided,* That in each county, at its preceding quarterly term, the County Court shall fix the number of deputies and their salary allowed for each officer enumerated in this section; *Provided further,* That for counties containing a population of ninety thousand (90,000) and over, the County Court shall not allow for any office a greater number of deputies with a greater salary than as follows: For Clerks and Masters, six deputies each, at a salary not to exceed one hundred and fifty dollars, one hundred and twenty-five dollars, one hundred dollars, seventy-five dollars, seventy-five dollars, and fifty dollars per month, respectively; for County Court Clerks, five

deputies, at a salary not to exceed one hundred and twenty-five dollars, one hundred dollars, seventy-five dollars, seventy-five dollars, and fifty dollars per month, respectively; for Criminal, Circuit, and Special Court Clerks, three deputies each, at a salary not to exceed one hundred and twenty-five dollars, one hundred dollars, and seventy-five dollars per month, respectively; for Registers of Deeds, four deputies, at a salary not to exceed one hundred dollars, seventy-five dollars, seventy-five dollars, and fifty dollars per month, respectively; and for County Trustee, four deputies, at a salary not to exceed one hundred and twenty-five dollars, one hundred dollars, seventy-five dollars, and fifty dollars per month, respectively."

Section 8 of the enrolled Act, which was approved by the Governor, is the same, except the second proviso therein, which is as follows:

"*Provided further,* That for counties containing a population of ninety thousand (50,000) and over, the County Court shall not allow for any office a greater number of deputies with greater salaries than as follows:"

The enrolled Act, being the same as the manuscript Act, is, presumably, the Act passed by the two houses of the Legislature.

The Court of Chancery Appeals held that each of these sections was in conflict with Section 8 of Article 11 of our State Constitution, because

of the restrictions upon the County Courts in the first and third classes in the matter of fixing the number of deputies and the amounts of salaries that may be allowed, while no such restrictions are placed upon the County Courts in the counties of the second class.

There is an irreconcilable conflict between the words "ninety thousand" and the figures "(50,-000).", in the second proviso of Section 8 of the enrolled Act, and, therefore, both cannot be given force and effect.

But the insistence of the defendant is, that the words "ninety thousand," preceding the figures "(50,000)," in parenthesis, should be stricken out, so that the second proviso to that section shall read as follows: *"Provided further,* That for counties containing a population of fifty thousand (50,000) and over, the County Court shall not allow for any officer a greater salary than as is thereinafter specified in that proviso."

If the figures prevail, then there will be only two classifications in Section 8 with like restrictions; if the words prevail, there will be three classifications, with restrictions as to the number of deputies and the amounts of their salaries in the first and third classes, but none as to those of the second class.

The words "ninety thousand," and figures "(50,-000)," in parenthesis, are in juxtaposition, and yet · in direct opposition, the former in writing,

and grammatically and logically connected with the
other parts of the sentence, the other in figures,
inclosed by brackets, the omission of which would
not injure the grammatical construction or mean-
ing of the sentence, and the question is, Which
shall prevail? The general rule of construction
is conceded that where there is a conflict be-
tween words and figures, the former prevail, and
this concession is in accord with the text-books
and decisions. *Warder* v. *Millard* 8 Lea, 581-
583; *Payne* v. *Clark & Bros.,* 19 Mo., 152.

And where the figures are subordinated in their
relation to the sentence by bracket inclosures, this
rule applies with greater force; because such part
of a sentence, as here, is not absolutely essential
to the sense, and is not grammatically connected
with the sentence. See Columbian Enc., 1893,
p. 22; Black's Dic. of Law.

But it is insisted in argument that it is highly
improbable that the General Assembly should have
intended to create an exception in favor of a
particular county or counties, and that the Court
should, if possible, place that construction on this
proviso which will make it conform to the Con-
stitution, and therefore will construe the Act in
accordance with the presumed intention of the Leg-
islature. But on the question of legislative intent,
the Court of Chancery Appeals found that the
second proviso of Section 8 of the Act, as in-
troduced in the House and passed by the two

houses, was the same as in the published Act; and did not, or should not, have contained the figures "(50,000)."

It further found from the Senate and House journals that while the motion of Senator Houk prevailed to strike out the words and figures "ninety thousand (90,000)," in said second proviso, and insert in lieu thereof "fifty thousand (50,000)," the House refused to concur in this amendment, and that when the bill went to a conference committee it reported that the Senate recede from this Houk amendment, and that the Senate did so. It further found the bill passed the two houses with the Houk amendment eliminated.

This finding of these facts is not a conclusion of law drawn from facts, as argued in behalf of defendant, but is the finding of specific facts, which is binding on this Court. But if it were not conclusive upon it, the result would be the same; because, upon a careful review of the legislative proceedings touching the bill, we have reached the same conclusion, and fully concur in the finding of the Court of Chancery Appeals.

And when the Governor of this State approved the bill by signing the engrossed copy, it was the bill passed with the ninety thousand in it which he approved, and his approval was as essential a part of the enactment of the law as its passage by the two houses of the General

Assembly. *Berry* v. *B. D. R. R. Co.,* 41 Md., 446; 20 Amer. R., 69; 16 *Id.,* 647; *State* v. *Platt,* 2 So. Carolina, 150; Sedgwick on Construction of Stat., p. 55.

Furthermore, as the learned Judge Neil, who delivered the opinion in the Court of Chancery Appeals, well said: "The result would be, if we should disregard the words 'ninety thousand,' in Section 8, and substitute therefor the figures '50,-000,' that we should have to determine that a different bill was passed by the House and Senate from that which was signed by the Speakers of the two houses; and hence that the bill, so signed, would be no law. *State, ex rel.,* v. *Swan,* 40 L. R. A., 195; *Brewer* v. *Mayor, etc.,* 2 Pickle, 732."

The written words have a plain and certain meaning, and leave no room for construction. They accord with the ascertained legislative intent, and in such case the written words must prevail over figures in parenthesis, and especially where the elimination of the written words would make a different bill from that which was passed by the two houses. We therefore concur on this question with the Court of Chancery Appeals.

There remains to be considered the question of whether or not the Act with the words "ninety thousand" prevailing over the figures "(50,000)," in said second proviso of the Act, is the law of the land or an inoperative and unconstitu-

tional Act upon the statute books. This question is always one where any doubt should be resolved in favor of . the validity of the Act under consideration.

At the threshold of our investigation we are greatly aided by the opinion of the Court of Chancery Appeals handed down by. Judge Neil, and in which Judge Barton concurred, holding the Act not to be the law of the land, and the opinion of Judge Wilson, holding that the Act is not only unconstitutional because not the law of the land, but also that it is violative of two other provisions of the Constitution—containing more than one subject and being the devolution of legislative power upon the County Court and the Judges of this Court.

The Court of Chancery Appeals was of the opinion that the Act, as published and as enrolled, was void as class legislation, because of its discrimination in the matter of deputies and their salaries.

If the legislation is obnoxious because it is partial legislation, the fact that it is legislation affecting the counties of the State does not cure its viciousness, because the constitutional prohibition is as effectual to prevent partial legislation as to counties as it is to the citizen. *Sutton* v. *State,* 12 Pickle, 696; *Burkholts* v. *State,* 16 Lea, 71; *Woodward* v. *Bryan,* 14 Lea, 520; *Miller* v. *Kister,* 68 Cal., 142; *Lodi Township* v.

*State,* 51 N. J. Law, 402; *Morrison* v. *Buchert,* 112 Pa. St., 322; *Edmonds* v. *Herbrandson,* 2 Dak., 270; *State* v. *Wood,* 49 N. J. Law, 88.

It appears that by the second section of the Act, the counties of the State are divided into four classes, and the salaries are graded according to those classes among the several county officers; and that by Section 8 of the Act there is a restriction upon the deputies to be allowed the several county officers in counties of the first class and in counties of the third class, and there is also a restriction upon their salaries, while in counties of the second class there is no restriction whatever as to the number of deputies nor as to the amount of salaries to be allowed deputies, except the uncontrolled discretion of the County Court; and it appears from the census of 1890 that Knox and Hamilton are the only counties in the second class.

If there is any reason which can be assigned, or even imagined, why restrictions should be put upon the county officers of Davidson County and of Shelby County, as to the number of deputies, and why no such restrictions should be put upon the same officers in the counties of Hamilton and Knox, it has not been suggested to us in argument, and we have not been able to suggest one.

In view of the decisions of this Court, we have carefully examined and re-examined this record in order to uphold this legislation, if it met the

requirements of the Constitution; but we find limitations placed upon the number of deputies to perform the public service in each and every county of the State, and to each and every county official in those counties, save alone in the counties of Knox and Hamilton, and we find a limitation of the salaries of those deputies, beyond which—no matter how extensive the service required is—the salary may not extend, except in said two counties.

It is observable that the second section of the Act divided the counties in the State into four classes, and the classification of the county officers, as to salaries, may be sustainable upon the theory that such classification is reasonable, through its natural relation to the amount of responsibility and service required; but the classification in Section 8 as to deputies and their salaries, leaves out of any consideration counties of the second class, which contain much less population than the counties of the first class. It places a limit upon the number of deputies in county offices, and upon the salaries of each of such deputies, in the counties containing a population of 90,000 and over and the counties having a population of less than 50,000, but places no such limit upon counties having a population of 50,000 and under 90,000.

But it is contended by defendant that this discrimination does not render the Act invalid, be-

cause of the fact that by an increase of population in the counties in the third class to 50,000, and by a decrease of population in the counties of the first class to less than 90,000, they may bring themselves within the grant of the exemptions in the second class, embracing counties having a population of 50,000 and over and under 90,000.

It is scarcely possible, and not within the bounds of reasonable probability, that the counties of Shelby and Davidson will ever so decrease in population as to bring them in the second class; but if they could so decrease as to do so, this would not meet the obnoxious features of the statute.

In the case of *Sutton* v. *State,* 12 Pickle, 708, the Court said: "It is no answer to this strange peculiarity of the law that the excluded counties may become included by a vote of their people, as provided in the latter part of the seventh section. The provision does not change or supersede the three preceding classes, but introduces another one. The counties of these three classes are included absolutely, whether they will be or not; their position under the law is irrevocably fixed. Why this difference? Why should the operation of the law be conditional as to some counties and unconditional as to others?"

The County Courts in the second class here

may fix any number of deputies they please in their respective counties.

(1) Why is it that they are limited in the number that they may appoint in the other two classes? (2) Why is it that the County Courts have unlimited discretion in the amount of salary they may fix for each deputy in the counties of the second class, to wit: Knox and Hamilton, provided the total fixed salaries of the deputies for each office is not greater than the total amount paid into the county treasury by the officers filling the office, while they are restricted as to the amount of salary they may allow in every other county in the State, and as to the amount of salary they may allow?

A still more unnatural and unreasonable provision of Section 8 is that while the number of deputies and salaries in the first, third, and fourth classes, as fixed by Section 2, and the first and third, as by Section 8, are regulated and graded according to the population of the respective classes, no such basis of grading the same is fixed by the Act as to the second class.

The County Courts of the second class may give more deputies with greater salaries than they can fix in the other counties of the first class, which, as shown by the census of 1890, have nearly double the population of the counties in the second class. Why is this grading of deputies and of their salaries in the first and third

classes, as fixed in Section 8, based upon the amount of population of the respective classes, while no such basis of grading is fixed for those of the second class?

The number of deputies and their salaries in all the counties having a population of less than 50,000 and over 90,000, are graded according to population. Why is not the same rule applied to counties having a population of 50,000 and over and under 90,000?

No good reason can be given for such an unnatural, arbitrary, and unreasonable rule, and under the rule laid down by this Court in the case of *Sutton* v. *State,* 12 Pickle, 706, makes the Act a partial law.

What is the reason of these strange and peculiar classifications? No reason is given, or appears, in the Act itself. None is presented by counsel. We are therefore constrained to hold that said Section 8 of the Act is in conflict with Section 8 of Article 11 of our Constitution. And it is evident that the different portions of this Act, including Section 8, are so dependent upon each other, and that this section was such an important element in its passage as a law, as to raise the presumption that the Legislature intended the Act to operate as a whole, and would not have enacted the valid provisions alone. *State* v. *Scott,* 14 Pickle, 256; *Dawson* v. *Reelfoot Dist.,*

13 Pickle, 151; *Tillman* v. *Cocke,* 9 Bax., 429; *Jones* v. *Memphis,* 17 Pickle, 188.

The effect of the elimination if this section would be to deprive the Clerk and Master, other Clerks, Trustees, Sheriffs, and Registers of Deeds of moneys out of which to pay their deputies, as they are required by the fifth section of the Act to pay into the county treasury of their respective counties all sums arising from fees, commissions, perquisites, or emoluments, etc., of their respective offices.

Each Sheriff would be compelled to pay the expenses of maintaining prisoners in his county jail out of his private funds. Such conditions would clog the wheels of justice, and very greatly obstruct the transaction of business in the offices filled by said officers, in all the populous counties of the State. No Sheriff could be induced to hold the office of Sheriff, and bear the burden of maintaining the county prisoners in any of those counties.

We therefore hold that this section is so interdependent with the other sections of the Act as to raise a very strong presumption that the Legislature would not have enacted the other sections alone, and the entire statute must be adjudged invalid.

There are other serious objections urged against the constitutionality of the Act which we do not

Weaver *v.* Davidson County.

deem necessary to pass upon, as the one discussed is fatal to the Act.

The decree of the Chancellor is reversed, and the decree of the Court of Chancery Appeals affirmed.