STATE *ex rel.* THOMPSON *v.* CUMMINS, County Judge.

(*Knoxville.*   September Term, 1918.)

STATUTES. Special laws. Discrimination. Counties.

Pub. Acts 1915, chapter 74, creating a constabulary for the State, and providing that expenses and compensation of members shall be paid by county or counties wherein services are rendered, but that counties having a population of 190,000 and over, according to the federal census of 1910, are exempt from the act, is unconstitutional, since no county but Shelby comes, or ever will come, within exception.

Acts cited and construed:   Acts 1915, ch. 74.

Cases cited and approved:   Redistricting Cases, 111 Tenn., 283; State v. Burnett, 53 Tenn., 188;   Sutton v. State, 96 Tenn., 696; Woodard v. Brien, 82 Tenn., 520;   Burkholtz v. State, 84 Tenn., 71; Mayor v. Dearmon, 34 Tenn., 119;   Moore v. State, 37 Tenn., 510; State v. Leonard, 86 Tenn., 487;   State v. Maloney, 92 Tenn., 68; State v. Nine Justices, 90 Tenn., 726;   Lauderdale County v. Fargason, 75 Tenn., 153;   Burnett v. Maloney, 97 Tenn., 697;   Bouldin v. Lockhart, 62 Tenn., 279;   Lindsay v. Allen, 112 Tenn., 637; State ex rel. v. Trewhitt, 113 Tenn., 571;   Morrison v. State, 116 Tenn., 534.

Case cited and distinguished:   Weaver v. Davidson County, 104 Tenn., 315.

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County. —HON. W. B. GARVIN, Chancellor.

WILLIAM H. SWIGGART, JR., Assistant Attorney-General, for relator.

WILL F. CHAMLEE, for county judge.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The only question involved in this cause is the constitutionality of chapter 74 of the Public Acts of 1915, which is as follows:

"An act to create a constabulary for the State of Tennessee, to be designated and known as the State Rangers, and to provide for their appointment and to define their powers and duties.

"Provided: "That this act shall not apply to counties having a population of 190,000 and over according to the federal census of 1910.

"Whereas, the Governor of Tennessee and the civil authorities of the several counties of the State are charged by law with the duty of protecting persons and property and of enforcing the laws and preserving the peace of the state:

"And whereas, conditions sometimes arise where the Governor and civil authorities are called upon and expected to preserve order and protect persons and property from the violence of organized forces:

"And, whereas, the State of Tennessee has not heretofore provided either the means or the authority to enable the performance of these duties:

"Section 1. Therefore, be it enacted by the General Assembly of the State of Tennessee, that there be hereby created a State constabulary, to be designated

and known as the State rangers, to consist of ten members who shall be appointed by the Governor and who shall hold office for the term of ten years, subject to removal by him for sufficient cause.

"Said ten members, when so appointed, shall constitute the regular force and shall be vested with and possess all the powers conferred upon the sheriff by section 4933 of the Code of 1858.

"Sec. 2.   Be it further enacted, that when acts of violence occur in any county of the State whereby the rights of persons or property are violated or jeopardized by organized forces, or by any considerable number of persons acting in conjunction or singly, and which may be brought to the attention of the Governor, he shall, in his discretion, direct the State rangers to police such county, or any part thereof, so disturbed, to suppress such acts of violence and to arrest all persons engaged or aiding and abetting therein.

"Sec. 3.   Be it further enacted, that the State rangers be attached to the adjutant general's office and by him organized and equipped for duty under the direction of the Governor, but they shall at all times be at the command of the Governor and under his general supervision and control.

"Sec. 4.   Be it further enacted, that each regular member of the State rangers shall receive as compensation for his services three dollars *per diem* and necessary expenses while actually engaged in the discharge of any official duty, the same to be paid upon voucher from the adjutant general's office out of any moneys in the state treasury not otherwise appropriated.

"Sec. 5.   Be it further enacted, that each of the regular members of the State rangers appointed by

the Governor under section 1 of this act shall have authority to summon and swear in the *posse comitatus* when necessary to meet any emergency and when for any reason, the Governor may not be able to appoint and supply the special members or force hereinafter provided for. The posse may be summoned from any county or counties in the State, in the discretion of the ranger, and the members thereof shall receive as compensation for their services two dollars *per diem* and necessary expenses while actually engaged in the service, the same to be paid as hereinafter provided.

"Sec. 6. Be it further enacted, that the Governor shall appoint such special members of the State rangers as may be necessary to aid the regular force effectually perform the duties herein imposed upon them, the period of their service, however, to extend no longer than the exigencies may demand.

"Such special members shall receive for their services the same compensation allowed the members of the *posse comitatus* in section five of this act, the same to be paid as hereinafter provided.

"Sec. 7. Be it further enacted, that the *per diem* and necessary expenses, which shall include all transportation of the members and equipment of the *posse comitatus* and of the special members as provided for in sections five and six of this act shall be paid by the county or counties wherein the service may be rendered, upon an itemized statement certified from the adjutant general's office showing the service rendered on behalf of such county or counties and upon the proper rendition of such account the county court of such county or counties shall provide for the payment of same, which

141 Tenn.—21

shall be by warrant drawn by the county judge or chairman and in favor of the State.

"Sec. 8. Be it further enacted, that this act shall not apply to counties having a population of 190,000 and over according to the federal census of 1910.

"Sec. 9. Be it further enacted, that this act take effect from and after its passage, the public welfare requiring it."

The chancellor held the act to be unconstitutional because in violation of article 11, section 8, of the State Constitution, which provides that the legislature shall have no power to suspend any law for the benefit of any particular individual, nor to pass any law for the benefit of any individuals inconsistent with the general law of the land, nor to pass any law granting to any individual rights, privileges, immunities, or exemptions other than such as may be by the same law extended to any member of the community who may be able to bring himself within the provisions of such law.

It is apparent that this act is a general law from which Shelby county was excepted. No other county comes within the exception, or can ever come within the exception by any subsequent federal census.

The case, therefore, falls within the rule announced in the *Redistricting Cases,* 111 Tenn., 283, 80 S. W., 761; which rule is supported by *State* v. *Burnett,* 6 Heisk., 188; *Sutton* v. *State,* 96 Tenn., 696, 36 S. W., 697, 33 L. R. A., 589; *Woodard* v. *Brien,* 14 Lea, 520; *Burkholtz* v. *State,* 16 Lea, 71; *Mayor* v. *Dearmon,* 2 Sneed, 119 and *Weaver* v. *Davidson County,* 104 Tenn., 315, 59 S. W., 1105, to wit:

"No benefit shall be conferred or no burden imposed upon the citizens of any given county, which by the

same act is not conferred upon or imposed upon all of the citizens of all of the other counties in the State who may be able to bring themselves, or may be brought, within the terms of the act conferring the benefit or imposing the burden.''

The court then says:

''It is apparent, therefore, that these cases do not oppose the hypothesis that the legislature may pass special laws for the regulation of individual counties, by name, as arms of the State government, or subordinate political entities, as distinguished from the personal relations of their several citizens.

''It is equally obvious that while *Moore* v. *State,* 5 Sneed, 510, *State* v. *Leonard,* 86 Tenn., 487, 7 S. W., 453, *State* v. *Maloney,* 92 Tenn., 68, 20 S. W., 419, *State* v. *Nine Justices,* 90 Tenn., 726, 18 S. W., 393, *Lauderdale County* v. *Ferguson,* 7 Lea, 153, and *Burnett* v. *Maloney,* 197 Tenn., 697, 702, 703, 37 S. W., 689, 34 L. R. A., 541, (as to its first point) do not necessarily establish the hypothesis, inasmuch as they rest upon special clauses of the Constitution which were held to confer or permit the power of special legislation in respect of matters falling thereunder, yet they furnish very useful analogies that point to the conclusion indicated by the hypothesis just referred to.''

It will thus be seen that the cause under consideration is not a special law for individual counties, as arms of the State government; neither does it fall within the line of cases recited above, which rest upon special clauses of the Constitution, but falls within the line of cases holding unconstitutional all acts which confer benefits or impose burdens upon citizens of some counties and not upon others.

It is not insisted by the State that if the exception to the act is unconstitutional that the remainder of the act is valid, and our decisions are to the contrary. *Burkholtz* v. *State,* 16 Lea, 73; *Bouldin* v. *Lockhart,* 3 Baxt., 279; *Weaver* v. *Davidson County,* 104 Tenn., 315, 59 S. W., 1105; *Lindsay* v. *Allen,* 112 Tenn., 637, 82 S. W., 171; *State ex rel.* v. *Trewhitt,* 113 Tenn., 571, 82 S. W., 480; *Morrison* v. *State,* 116 Tenn., 534, 95 S. W., 494.

The learned chancellor was correct in holding the act in question unconstitutional and in dismissing the complainant's bill, and his decree is in all things affirmed.