THOMAS S. HUNTER *v.* SAM A. CONNER *et al.*[*]
SAME *v.* HAMILTON COUNTY *et al.*

### (*Nashville.* December Term, 1925.)

1. **STATUTES.** Purpose of constitutional article, relative to title of proposed legislation, stated.

Purpose of Constitution, article 2, section 17, providing that no bill shall become a law which embraces more than one subject, which shall be expressed in its title, was to give notice of nature of proposed legislation and prevent surprise and fraud in the enactment of laws. (*Post, pp.* 268, 269.)

Acts cited and construed: Acts 1921, ch. 101; Acts 1879, ch. 8; Acts 1897, ch. 124; Acts 1917, chs. 47, 77;

Cases cited and approved: State v. McCann, 72 Tenn., 14; Weaver v. Davidson Co., 104 Tenn., 316; Hickman v. Wright, 141 Tenn., 417; State v. Stewart, 147 Tenn., 375; Memphis Street Ry. Co. v. Byrne, 119 Tenn., 278; Cannon v. Mathes, 55 Tenn., 515; State v Hayes, 116 Tenn., 540.

Constitution cited and construed: Art. 2, sec. 17; Art. 11, sec. 8; Art. 1, sec. 8.

2. **STATUTES.** Title need not index details of act or give synopsis of it to meet constitutional requirement relative to title.

Hunter v. Conner.

In order to meet the requirements of Constitution article 2, section 17, it is not necessary for a title of proposed bill to index the details of the act or give a synopsis thereof, but it is sufficient to direct the mind to the object of the proposed legislation; the general purpose being accomplished if the caption states object of legislation, so that legislative intent may be gathered from the words used. (*Post, pp.* 269, 270.)

3. **CONSTITUTIONAL LAW.** Whether provisions of act are germane to title and congruous must be determined by court on inspection of its terms.

The legislature must determine comprehensiveness of proposed legislation and particularity to be employed in the title defining it, but the question of whether the provisions of such act are germane to the title and congruous must be determined by the court upon inspection of its terms. (*Post, pp.* 269, 270.)

Cases cited and approved: Memphis Street Ry. Co. v. Byrne, 119 Tenn., 278; Truss v. State, 81 Tenn., 312; Van Dyke v. Thompson, 136 Tenn., 136; Ryan v. Terminal Co., 102 Tenn., 126; State v. Cumberland Club, 136 Tenn., 84; Frazier v. Railroad, 88 Tenn., 138; State ex rel. Morrell v. Fickle, 71 Tenn., 79.

4. **STATUTES.** Mode or instrumentalities of enforcement may be embraced in body of act, though not recital in caption.

When the subject of a statute is sufficiently expressed in its title, the measure, mode, means, or instrumentalities of its enforcement, administration, or accomplishment may be embraced in its body, though not recited in caption. (*Post, p.* 270.)

Case cited and approved: Petty v. Phoenix Cotton Oil Co., 150 Tenn., 295.

5. **STATUTES.** Statute fixing salaries of certain county officers held not to violate Constitution as embracing more than one subject expressed in title.

The caption of Acts 1921, chapter 101, entitled "An act fixing the salaries of certain county officials in the state," and to provide for the disposition of fees, etc., *held* not to violate Constitution article 2, section 17, as embracing more than one general subject expressed

Hunter v. Conner.

in its title, and provisions of such act relative to diversion of fees from several officers to the county treasury, the keeping of accounts, and requirements as to furnishing of office supplies and other provisions being congruous and germane to the title and mere details necessary to the accomplishment of the respective objects, it was not necessary to provide for them in separate acts.  (*Post, p.* 270.)

6.. **STATUTES.** Statement in caption and statute that it repealed all laws and parts of laws in conflict therewith did not require statement in caption or otherwise of laws repealed.

The words "to repeal all laws and parts of laws in conflict," concluding caption, and found in section 23, Laws 1921, chapter 101, relative to fixing salaries of certain officials, did not give statute the character of repealing statute making it unconstitutional as contravening Constitution 2, section 17, requiring all acts repealing others to state, in caption or otherwise, title and substance of law repealed.  (*Post, pp.* 270, 271.)

Cases cited and approved: State v. Yardley, 95 Tenn., 558; Turner v. State, 111 Tenn., 606; Knoxville v. Lewis, 80 Tenn., 183.

Constitution cited and construed: Art. 2, sec. 17.

7.  **STATUTES.** Reasonable classification of counties according to population standard for application of laws that may affect alike all naturally falling into the class not prohibited.

Provisions of Constitution article 11, section 8, prohibiting legislation which grants favors and benefits inconsistent with general law, and article 1, section 8, forbidding the imposition of burdens not imposed alike on others of the class do not forbid reasonable classification of counties according to population standard for the application of laws that may affect all alike that fall naturally into the class.  (*Post, p.* 271.)

Cases cited and distinguished: State v. Stewart, 147 Tenn., 379; Weaver v. Davidson Co., 104 Tenn., 315.

Constitution cited and construed: Art. 1, sec. 8, Art. 11, sec. 8.

8.  **CONSTITUTIONAL LAW.** Police and revenue statutes will be upheld if classification therein can be justified by any possible reason.

Legislature has wide range of discretion in police and revenue statutes, and, if any possible reason can be conceived to justify the

Hunter v. Conner.

classifications made therein, they will be upheld. (*Post, pp.* 271, 272.)

Case cited and approved: Ogilvie v. Hailey, 141 Tenn., 396.

9. **STATUTES.** Statute transferring fees of county officers to county treasury, and fixing compensation on population standard, held not unconstitutional as capricious or arbitrary classification.

Laws 1921, chapter 101, transferring fees of all county officers to the county treasury, and substituting as compensation a maximum salary determined by the population standard commensurate with the responsibilities and service, *held* not to violate Constitution, article 11, section 8, as a capricious or arbitrary classification, imposing no burden on any county, conferring no privileges or benefits upon any county that may not equally be enjoyed by all counties naturally falling within the class, and classification standard fixed being reasonable and necessary to enable legislature to determine and graduate compensation of county officials in counties of widely varying population, thus relating compensation to the amount of responsibility and service required. (*Post, pp.* 272, 273.)

Acts cited and construed: Acts 1897, ch. 41; Acts 1899, ch. 13; Acts 1921, ch. 101.

10. **OFFICERS.** County officers subject to legislative control as well as state officials.

County officers are subject to legislative control as well as State officials; the county being an integral part of the State. (*Post, pp.* 273, 274.)

11. **OFFICERS.** Public offices in Tennessee are not incorporeal hereditaments.

Public offices in Tennessee are not incorporeal hereditaments, and have none of qualities of grant, nor do officers hold under contract. (*Post, pp.* 273, 274.)

12. **OFFICERS.** Officer entitled to fees not by force of contract.

Public officer is not entitled to his fees by force of contract but because the law attaches such fees to the office. (*Post, pp.* 273, 274.)

Cases cited and approved: Hill v. Roberts, 142 Tenn., 222; Jones v. Hobbs, 63 Tenn., 120; Haynes v. State, 22 Tenn., 482.

13. **OFFICERS.** Compensation of officers may be increased or diminished at any time by legislature, even though such action affect future emoluments of incumbent in office.

The right of an officer to demand fees for compensation does not arise from any contract between the official and the State, and such compensation may at any time be increased, diminished, or abolished altogether by the legislature, even though such action affect future emoluments of incumbent in office. (*Post, pp.* 274, 275.)

14. **COUNTIES.** Statute fixing fees of county officers held not unconstitutional as affecting personal property rights of officials, interfering with their control or conduct of office, or imposing additional unequal burdens.

Laws 1921, chapter 101, transferring fees of county officers to county treasury, and substituting as compensation a salary based on population standard, *held* not unconstitutional, affecting neither personal nor property rights of officers, since, by section 25, act was not to be effective until expiration of official's term, not interfering with control or conduct of offices by officials, and not imposing any additional unequal burden upon any office other than that of keeping amount of fees and paying excess over maximum salary into county treasury. (*Post, pp.* 274, 275.)

15. **OFFICERS.** Legislature may fix compensation of officials on basis of service performed and fees collected.

Legislature may regulate, control, and abolish fees of public officials, in absence of constitutional limitations, and may fix officer's compensation on the basis of service performed and fees collected. (*Post, pp.* 275, 276.)

16. **STATUTES.** Statute did not make capricious or arbitrary classification because it provided against repeal of local acts fixing salaries in certain counties.

Laws 1921, chapter 101, transferring fees of county officers to county treasury and fixing compensation on salary basis based on population standard, *held* not unconstitutional as containing arbitrary or capricious classification, merely because in section 23 thereof it provides against the repeal of certain local acts to supplement fees of county officers in small counties, for such act, being general, can-

Hunter v. Conner.

not be construed *in pari materia* with such latter's local acts. (*Post*, *pp.* 276, 277.)

17. **CONSTITUTIONAL LAW.** Court's duty to save constitutionality of statute unless violation clearly shown.

A local act will not be considered *in pari materia* with a general act for the purpose of destroying the latter's constitutionality, for it is the duty of the court to save the constitutionality of a statute, unless violation is clearly shown; it being supposed that legislature considered constitutionality of the act, and court cannot give statute a strained construction to find an opportunity to declare it void. (*Post, pp.* 276, 277.)

Acts cited and construed: Acts 1921, ch. 101.

18. **CONSTITUTIONAL LAW.** Validity of local acts, expressly excepted from repeal from general act, not considered on review of proceedings involving validity of latter.

In an action involving validity of general act of legislature, the constitutionality of certain local acts which general act expressly excepted from repeal is not before the court for review. (*Post, p.* 277.)

19. **STATUTES.** Local acts suspending general law for benefit of particular county void, and cannot operate to destroy uniformity of general law.

A local act, which suspends general law for benefit of particular county, is void, and cannot operate to destroy the uniformity of the general law. (*Post, p.* 277.)

20. **CONSTITUTIONAL LAW.** Act providing for appointment of deputies and assistants of county court held not wrongful delegation of legislative authority.

Laws 1921, chapter 101, providing that, in counties where additional clerical assistance is required, court shall appoint and fix salaries of deputies, *held* not to wrongfully delegate legislative power to courts for legislature may, under Constitution, article 11, section 9, impose such duties upon court to carry out and control the details necessary to the accomplishment of the object intended by the act. (*Post, pp.* 277, 278.)

Case cited and distinguished: Hickman v. Wright, 141 Tenn., 412.
Constitution cited and construed: Art. 11, sec. 9.

21. **CONSTITUTIONAL LAW.** Legislature could not delegate power to fix salaries of county officers or regulate clerk of any of courts.

The legislature cannot delegate power to fix salaries of county officers or of regulate clerk of any of the courts, and hence provisions in Laws 1921, chapter 101, section 4, delegating authority in fixing salary of clerk of special court was invalid. (*Post, p.* 278.)

22. **STATUTES.** Legislature could not save void act by inserting provisions that void portion of act should not invalidate any other part.

Legislature could not save void act by inserting provisions that void portion of act should not invalidate any other part. (*Post, pp.* 278, 279.)

23. **STATUTES.** Void portion of act, which is severable, and elision of which does not impair act as entirety, may be treated as nullity.

Where portion of Acts 1921, chapter 101, section 4, which unlawfully delegated to court authority to fix salary of clerk of special courts, was easily severable, and did not impair such act in its entirety, such void portion may be treated as a nullity, leaving remainder of act in full force and effect. (*Post, pp.* 278, 279.)

24. **CONSTITUTIONAL LAW.** Legislative act primarily presumed to be constitutional, and intendments must be made in their favor to give effect to legislative intent.

Legislative act primarily presumed to be constitutional, and intendments must be made in their favor, to give effect to legislative intent. (*Post, pp.* 278, 279.)

Cases cited and approved: State v. Cummins, 99 Tenn., 667; Fite v. State, 114 Tenn., 659; Cummings v. Trewhitt, 113 Tenn., 561; State v. Willett, 117 Tenn., 334; McCamey v. Cummins, 130 Tenn., 495; Rhinehart v. State, 121 Tenn., 435.

25. **COUNTIES.** Not necessary under statute for county trustee to hold fees from several offices intact until expiration of term for purpose of making up deficiency in salary for any year during term.

It is not necessary, under Laws 1921, chapter 101, section 16, for the county trustee to hold fees from several offices intact until the ex-

piration of their terms for the purpose of making up deficiency in their salary for any year during term, but it is sufficient to keep an account of the fees accruing from each office, and, at end of official term, any salary deficiency may be supplied from excess of fees collected by the office during term. (*Post, pp.* 279, 280.)

### FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County. —HON. W. B. GARVIN, Chancellor.

SIZER, CHAMBLISS & JOHNSON, for Hunter.

C. S. LITTLETON, FORD & BRYAN and BROWN & SPURLOCK, for Hamilton County.

ALLISON, LYNCH & PHILLIPS, JOE BROWN, JOE V. WILLIAMS, CATES, SMITH, TATE & LONG and SMITH, WORD & ANDERSON, for Conner and others.

MR. JUSTICE COOK delivered the opinion of the Court.

This appeal involves the validity of chapter 101 of the Acts of 1921, to fix the salaries of certain county officials, and provide for the disposition of the fees of their office. Four previous acts, intended to transfer fees to the public treasury and compensate officials by a fixed salary, were declared void.

Chapter 8 of Acts of 1879 was held void because violative of article 2, section 17, of the Constitution, in *State v. McCann,* 4 Lea, 14.

Chapter 124, Acts of 1897, was declared void in *Weaver v. Davidson County,* 104 Tenn., 316, 59 S. W., 1105, because it circumscribed the authority of county courts to

determine the number of deputies and their salary in two classes of counties, and imposed no restriction upon counties of another class. It was held void as violative of article 11, section 8, of the Constitution.

Chapter 47, Acts of 1917, classified thirteen counties wherein compensation was provided, and excluded eighty-three counties without providing compensation by salary or otherwise. This classification was declared violative of article 1, section 8, and article 11, section 8, of the Constitution, in *Hickman* v. *Wright,* 141 Tenn., 417, 210 S. W., 447.

Chapter 77, Private Acts of 1917, to deprive officers of their fees in Shelby county, and to provide salaries, was void because it imposed burdens upon officers of Shelby county to the exclusion of others, and suspended a general law for the benefit of a single county. *State* v. *Stewart,* 147 Tenn., 375, 247 S. W., 984.

The legislative history of the State shows a purpose to abolish the system of compensating officers by fees, to transfer the fees to the public treasury, and allow county officials a salary not to exceed the maximum of fees coming to the particular office, and proportioned to fit the obligations and duties of the particular officer. The act under review expresses a similar purpose. This act deprives all county officials of their fees, and regulates their compensation in all the counties of the State, classified by reference to population.

Upon hearing before the chancellor, he sustained the act, after eliding the second paragraph of section 4, which was held an unauthorized delegation of legislative power.

Upon appeal, it is urged that the act is void because:

First, the caption embraces more than one subject, while the body of the act embodies many unrelated sub-

Hunter v. Conner.

jects of legislation contrary to article 2, section 17, of the Constitution.

Second, the act is arbitrary and capricious in its classification, contrary to article 1, section 8, and article 11, section 8, of the Constitution; that it imposes burdens on officers of one class of which others are relieved, and deprives county officials of their authority and lawful compensation without due process of law in that it takes away their inherent right to employ deputies, conduct their office according to their judgment, and denies them adequate compensation for their services.

Third, that the act delegates legislative power to the courts in violation of the Constitution.

The caption of the act reads:

"An act to be entitled 'An act fixing the salaries of certain county officials in the State, to-wit: The several clerks and masters of the chancery courts, clerks and masters of the various special chancery courts, clerks of the various county and probate, circuit, criminal and special courts, county trustees, register of deed, and sheriffs; to provide for the disposition of the fees of their offices; to fix the salaries of said officers and to provide for the payment thereof; to provide for the appointment and removal of deputies and assistants to said officers and to prescribe the manner of fixing their compensation and the payment thereof; to provide for the payment of the expenses of the offices and for a system of auditing for said offices; to provide punishment for the violation of certain provisions of this act, and to otherwise regulate the rights, duties and liabilities of the said officers and to repeal all laws and parts of laws in conflict with this act.' "

The act expresses a legislative purpose to abolish the old system and institute a new one by fixing a maximum salary for all county officials after first transferring all the fees of the office to the county treasury. This single purpose is expressed in sections 1 to 4, inclusive. All subsequent sections of the act relate to details necessary to carry out the legislative intention, and are germane to the object expressed in the caption and followed up in the body of the act.

The purpose of article 2, section 17, of the Constitution, was to give notice of the nature of the proposed legislation and prevent surprise and fraud in the enactment of laws. · *Memphis Street Railway Co.* v. *Byrne,* 119 Tenn., 278, 104 S. W., 460.

Before the Constitution of 1870, the practice prevailed of preparing omnibus bills containing incongruous subjects, with a view of enlisting the aid of as many legislators as were interested in the several subjects, and by such combination of effort to pass the bill as a whole when no one of the subjects so embraced could have secured the favorable consideration of the legislature or a majority of its members. This was not the only evil met by article 2, section 17. Experience had shown that objection· able provisions were craftily introduced into pending measures, without intimation given in the title. *Cannon* v. *Mathes,* 8 Heisk, 515; *State* v. *Hayes,* 116 Tenn., 540, 93 S. W., 98.

To prevent objectionable legislation through such methods, it was provided in article 2, section 17, that: "No bill shall become a law which embraces more than one subject, that subject to be expressed in the title. All acts which repeal, revive or amend former laws, shall

recite in their caption, or otherwise, the title or sub-
stance of the law repealed, revived or amended.''

To meet this constitutional requirement it is not nec-
essary for the title to index the details of the act or give
a synopsis of it. *Memphis Street Railway Co.* v. *Byrne,*
119 Tenn., 278, 104 S. W., 460. It is sufficient to direct
the mind to the object of the proposed legislation (*Truss*
v. *State,* 13 Lea, 312); the general purpose being accom-
plished, if the caption states the object of the legislation
so that the legislative intent may be gathered from the
words used (*Van Dyke* v. *Thompson,* 136 Tenn., 136, 189
S. W., 62; *Ryan* v. *Terminal Co.,* 102 Tenn., 126, 50 S.
W., 744, 45 L. R. A., 303). The legislature must deter-
mine how broad and comprehensive the object of the act
shall be, and the particularity to be employed in the title
defining it (*State* v. *Cumberland Club,* 136 Tenn., 84, 188
S. W., 583), but the question of whether the provisions of
the act are congruous and germane must be determined
by the court upon an inspection of its terms. *Frazier* v.
*Railroad,* 88 Tenn., 138, 12 S. W., 537.

The provisions of the act relating to the diversion of
fees from the several offices to the county treasury, the
requirement that officers keep an account of the fees
collected, the provision for an audit and accounting of
the fees so collected by the office, and the requirement
that counties shall furnish office supplies and other re-
lated provisions, are not incongruous, but refer to the one
general subject expressed in the caption, and form a nat-
ural connection with it. These provisions were necessary
to accomplish the object of the legislature as expressed
in the caption. It was not necessary to provide for these
details in a separate act. Such a requirement would be

unreasonable and impractical. *State ex rel. Morrell* v. *Fickle,* 3 Lea, 79.

When the subject of a statute is sufficiently expressed in the title, the measure, modes, means, or instrumentalities of its enforcement, administration, or accomplishment may be embraced in its body, though not recited in the caption. *Petty* v. *Phoenix Cotton Oil Co.,* 150 Tenn., 295, 264 S. W., 353.

We have no difficulty in concluding that the caption of the act expresses one general subject, and expresses it sufficiently to meet the requirement of the Constitution, and that the provisions of the act are germane to the title, and not inconsistent with each other.

It is next urged that the act violates article 2, section 17, of the Constitution, by failing to state the substance of the title of acts repealed. While the conclusion of the caption and the provisions of section 23 read, "to repeal all laws and parts of laws in conflict," the act is not a repealing statute. It does not in fact expressly repeal any law. Such words, of themselves, used in an act, do not give to it the character of a repealing statute. They add nothing to the meaning of the act, and take nothing from it, and must be regarded as surplusage. *State* v. *Yardley,* 95 Tenn., 558, 32 S. W., 481, 34 L. R. A., 656; *Turner* v. *State,* 111 Tenn., 606, 69 S. W., 774; *Knoxville* v. *Lewis,* 12 Lea, 183.

In *Turner* v. *State,* the last clause of the caption reads, "to repeal all laws in conflict with this act." The last section of the act contained a general repealing clause. The court said the repealing clause had no legal effect, that the act is of the same legal import in point of valid-

ity as if the clause were omitted, because the words without more did not give character to the act.

Through the second and fourth assignments of error it is urged that the act violates article 1, section 8, and article 11, section 8, of the Constitution.

Article 11, section 8, forbids legislation which grants favors and benefits inconsistent with the general law, and article 1, section 8, forbids the imposition of burdens not imposed alike upon others of the class. These provisions do not forbid reasonable classification of counties according to the population standard for the application of laws that may affect alike all that fall naturally into the class. 1 Sutherland, Stat. Const., 203; *State* v. *Stewart,* 147 Tenn., 379, 247 S. W., 984; *Weaver* v. *Davidson County,* 104 Tenn., 315, 59 S. W., 1105.

In *State* v. *Stewart,* 147 Tenn., 375, 247 S. W., 984, the court said: ''We do not wish to be understood as holding that the legislature cannot classify the counties of the State upon a population basis, as was done by the Estes fee bill, which was held unconstitutional . . . in *Weaver* v. *Davidson County,* . . . upon other grounds.''

In *Weaver* v. *Davidson County,* 104 Tenn., 330, 59 S. W., 1105, the court said:

''It is observable that the second section of the act divided the counties of the State into four classes, and the classification of the county officers as to salaries, may be sustainable upon the theory that such classification is reasonable through its natural relation to the amount of responsibility and service required.''

In considering the question of classification as a means of graduating the salaries of the county officers on the

basis of service and responsibility, it must be observed that the decisions of this court and of the federal supreme court have conceded to the legislature a wide range of discretion in police and revenue statutes, and, if any possible reason can be conceived to justify the classification, it must be upheld. *Ogilvie* v. *Hailey*, 141 Tenn., 396, 210 S. W., 645.

Chapter 101, Acts of 1921, is a general law in the sense that it applies to the entire State, all the counties of which are classified upon the population basis for the purpose of regulating the compensation of officers coming within the class. Allowance is made for increased responsibility and service attendant upon officers in the larger counties, by an increased maximum salary, and by a provision for official assistance to be paid from the proceeds of fees collected by the office. The salary is graduated according to the population, which is a fair index of official duty and responsibility. As between counties, the classification is not capricious or arbitrary, the act imposes no burden upon any county, nor does it confer any privilege or benefit upon any county that may not be equally enjoyed by all counties naturally falling within the class.

The legislators, in the exercise of their governmental power, transferred the fees of all county officers to the county treasury, and substituted as compensation a maximum salary, determined by the population standard, commensurate with the responsibility and service, providing that the salary should be derived from fees paid into the office, and should not exceed in any event the aggregate earned by the office.

The power to take away the fees of an office and substitute a salary was exercised in chapter 41, Acts of 1897, when the fees of district attorneys were appropriated and a salary substituted. The power was again exercised in chapter 13, Acts of 1899, when fees of coal oil inspectors were appropriated to public use, and a salary, graduated according to the population of the cities, substituted for fees as compensation.

The graduation of privilege taxes according to the population standard has been sustained as valid in many of our cases, and, where the classification is reasonable, the population standard may be used as the basis of other classifications. Classification under this act was necessary to enable the legislature to determine and graduate the maximum compensation for county officials among counties of such a widely varying population.

The county is an integral part of the State (*Hill* v. *Roberts,* 142 Tenn., 222, 217 S. W., 826), and county officers are as much subjects of legislative control as State officials. When we consider the insistence that the act capriciously and unlawfully attempts to regulate the pay of county officers and deprives them of vested rights, it must be borne in mind that public offices in Tennessee are not incorporeal hereditaments as at common law, and that they partake of none of the qualities of a grant. Except in North Carolina, it is nowhere held that officers hold under contract.

It is uniformly held that the public enters into no agreement with officers that they shall receive any specific compensation during the term. When the Constitution fixes the compensation, it is of course beyond legislative control. Free of constitutional inhibition, the leg-

152 Tenn.—18.

islature at their discretion may reduce the salary attached to an office, or lessen the fees prescribed for official service, or abolish them. *Jones* v. *Hobbs,* 4 Baxt., 120; Throop, Public Officers, section 443; Mechem on Public Officers, section 857.

The officer is entitled to his fees, not by force of contract, but because the law attaches the fees to the office. The law may take away the fees altogether and substitute other modes of compensation. As early as 1842, the court said, in *Haynes* v. *State,* 3 Humph., 482, 39 Am Dec., 187, that compensation of officers may be changed, modified, and reduced by the legislature during the term, unless forbidden by the Constitution.

In 22 R. C. L., p. 527, the same rule is announced, followed by the statement that, when compensation is paid by the fee system, or on the basis of business done, it is not unusual to have a maximum sum fixed beyond which the officer is not to receive any emoluments, and that the legislature normally has power to change the basis of compensation.

It is the general rule that the right of officers to demand fees for compensation does not arise from contract between the official and the State, and that compensation may at any time be increased or diminished, even though such action may affect the future emoluments of an incumbent in office. But, in the passage of the act before us, the legislature avoided interference with the expectation of incumbents of office. It is provided in section 25 that the act should not become effective until the expiration of the official term. Every county official who accepted office after the act became effective knew that the legislature, exercising their governmental powers, ap-

propriated all fees to the counties in excess of a maximum salary to be derived from the fees of the office. The act does not affect the person or the property rights of any official who assumed office after it became effective. It does not interfere with their control or conduct of the office. It imposes no additional obligation upon any officer other than that of keeping the amount of their fees and paying the excess over the maximum salary into the county treasury.

The Constitution fixes the term of most county officials, but it does not prescribe or attempt to regulate the compensation of any of them. That is essentially a legislative power, and, in the exercise of the power, the legislature may increase or diminish the fees of any office, abolish them altogether, or appropriate them to public use, and compensate the official by a salary. In view of the power of the legislature to regulate, control, and abolish the fees of public officials in the absence of constitutional limitation, it seems apparent that the legislature may fix their compensation on the basis of service performed and fees collected. Any other view would result in adherence to the rule of the common law that an office is a grant for the benefit of the incumbent. It would recognize a restraint upon the power of the State to exercise control over public officers and their compensation, contrary to the spirit of our institutions and the general law.

The act does not affect any person or property right. It imposes no burden not equally borne by others who may come into the class, and confers no privilege upon any county that may not be enjoyed by other counties of the class. Officers of the smaller class of counties are

not given the same compensation as those of the larger class of counties, because the same service is not rendered and the same amount of fees not collected. (The maximum compensation is contingent upon the services rendered which controls the revenue coming in the form of fees.) The classification of county officers as to their salary is reasonable, because of its relation to the amount of responsibility and service required.

It is urged that the saving provision in section 23, against the repeal of certain local acts supposed to supplement the pay of county officers, destroys the uniformity in classification and renders the act capricious. It is said that this act must be construed *in pari materia* with the acts referred to, and, when this is done, that it will render the classification arbitrary and capricious.

Those acts bear no relation to chapter 101, Acts of 1921, intended to abolish the system of compensation by fees and fix a maximum salary as compensation for county officers. They relate to the smaller counties of the State, where the business is so small, and the fees so inadequate, as to exclude from public service capable and competent officials. Under them compensation of county officers is supplemented by a small stipend from the county treasury, or a maximum salary is fixed and fees are devoted to the public use.

Under authority of *Stewart* v. *State,* supra, some of the acts referred to would be no doubt invalid, especially those that attempt to substitute a salary and appropriate fees to the public treasury. This act cannot be construed *in pari materia* with local and private acts, especially for the purpose of finding an opportunity for destroying it. It is the duty of the court to save the con-

stitutionality of a statute, unless the violation of the Constitution is clearly shown. It is supposed that the legislature considered the constitutionality of the act, and that it did not pass it in violation of the constitutional mandate. We cannot, therefore, give to the act a strained construction as a means of finding an opportunity to declare it void.

The other acts, which it is insisted must be construed in connection with this, are not before us for review. Their validity cannot be brought in question in this proceeding. If they suspend a general law for the benefit of a particular county, they would be void, and could not operate to destroy the uniformity of the act before us.

It is next urged that the act delegates legislative power to the courts. Article 11, section 9, of the Constitution, provides:

"The legislature shall have the right to vest such powers in the courts of justice, with regard to private and local affairs, as may be expedient."

The legislature may pass general laws and impose duties upon others to regulate and control the details necessary to accomplish the objects intended. The purpose of this act was to limit the compensation of county officers to a maximum salary, graduated according to the service rendered, dependent upon the classification of counties by population. Officers in counties of the larger class assume greater responsibility than those of the smaller, and are called upon to perform more work. In this class of counties additional clerical assistance is allowed, but the legislature lacked adequate knowledge of the requirements of these officers for clerical help to enable them to determine the number of assistants and the amount required to obtain their services.

In *Hickman* v. *Wright,* 141 Tenn., 412, 210 S. W., 447, the court said:

"As to the policy of delegating to the courts the authority to determine the number of deputies and the salaries they are to receive, this court has nothing to do; but, if the legislature sees proper to confer this power on the courts, then under the foregoing provision of the Constitution we think it has a right to do so, and that it would not be a wrongful delegation of power, and would not be imposing nonjudicial duties on the courts."

As to the delegation of authority to fix the salary of clerks of special courts referred to in the last paragraph of section 4 of the act under review, in our opinion the legislature could not delegate the power to fix the salary of a county officer or of a regular clerk of any of the courts; hence this provision is invalid.

Section 22 of the act provides that, if any section or part of the act is found invalid, such fact shall not invalidate any other part of it. In other words, this section provides for elision. By such a provision the legislature could not save a void act, but it is clearly apparent that the provision in the last paragraph of section 4 is detached and not interwoven with other provisions, and that the act can stand with it omitted. Elision of this part of the act does not make a *casus omissus.* The clerk of a special court is a principal officer. He is the clerk of a chancery court, circuit, criminal, or probate court, without regard to whether it is a special court or one of the regular courts of the county, and, with the paragraph referred to elided, these officials fall under the provisions of sections 1, 2, and 3 of the act.

It is the general rule that legislative acts are primarily presumed to be constitutional, and that all intendments must be made in their favor, so as to give them effect according to the intent of the lawmaking power. It is clearly apparent that what remains of this act after eliding the paragraph referred to leaves it complete within itself and capable of being executed in exact accordance with the will of the legislature and altogether independent of the elided portion. The rejected provision is merely incidental and subordinate, and, as stated, the act is complete without it. It is easily severable, and does not in the least impair the act as an entirety. The invalidity of such a provision does not invalidate the entire act, but may be treated as a nullity. *State* v. *Cummins,* 99 Tenn., 667, 42 S. W., 880; *Fite* v. *State,* 114 Tenn., 659, 88 S. W., 941, 1 L. R. A. (N. S.), 520, 4 Ann. Cas., 1108; *Cummings* v. *Trewhitt,* 113 Tenn., 561, 82 S. W., 480; *State* v. *Willett,* 117 Tenn., 334, 97 S. W., 299; *McCamey* v. *Cummins,* 130 Tenn., 495, 172 S. W., 311; *Rhinehart* v. *State,* 121 Tenn., 435, 117 S. W., 508, 17 Ann. Cas., 254.

We think it clear that the legislature would have enacted this statute had this provision been omitted, for the compensation of officers of such special courts are limited and controlled by the maximum allowance under section 3 of the act.

It is insisted that under the provisions of the last sentence of section 16 of the act it is the duty of the county trustee to hold the fees from the several offices intact until the expiration of the official term, for the purpose of making up any deficiency of salary for any year during the term.

Under the provisions of section 16 all the fees of the office are to be paid into the county treasury, and it is not necessary to keep such fees intact. They become county revenue. It is sufficient to keep an account of the fees accruing from each office, and at the end of the official term any deficiency of salary may be supplied from the excess of fees collected by the office during the term.

It follows that the decree of the chancellor is affirmed.